CLERK'S OFFICE U.S. DIST. COURT
AT HARRISONBURG, VA
FILED
March 28, 2025
LAURA A. AUSTIN, CLERK
BY: s/J.Vasquez
    DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | |
|---|---|
| Deise Almeida Ellston, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 5:24-cv-00045 |
| ) | |
| Jeffrey LeHew *et al.*, ) | |
| ) | |
| Defendants. ) | |

**<u>MEMORANDUM OPINION</u>**

This matter is before the court on Defendants Jeffrey LeHew, Jay LeHew, Nicholas LeHew, Advent of Virginia, Inc., Jeffrey L. LeHew Family, LLC I-XIV, Via Satellite, Inc., JLL Aviation, LLC, JLL Family, LLC, and JLL Venture, LLC's motion to dismiss. (Dkt. 21.) The court referred the matter to the Honorable Joel C. Hoppe, United States Magistrate Judge, to issue a Report and Recommendation ("R&R") pursuant to 28 U.S.C. § 636(b)(1)(B). Judge Hoppe entered his R&R on November 21, 2024, recommending that this court grant Defendants' motion to dismiss. (Dkt. 35.) Plaintiff Deise Almeida Ellston, proceeding *pro se*, filed objections to the R&R, (Dkt. 36), and Defendants responded, (Dkt. 37).

For the reasons stated below, the court will overrule in part and sustain in part Ellston's objections, modify the R&R to the extent that it does not consider the original complaint, adopt the modified R&R, and grant Defendants' motion to dismiss.

## I.    Background

Plaintiff Deise Almeida Ellston brought this action *pro se* against Defendants Jeffrey LeHew, Jay LeHew, and Nicholas LeHew (the "LeHew Defendants") on June 3, 2024, in the Circuit Court of Warren County, Virginia. (*See* Compl. (Dkt. 9).) Ellston's complaint alleged discrimination and retaliation by her employer, Via Satellite, Inc., after she reported harassment and racism perpetrated by her supervisor. (*Id.* at 3–4.)

Ellston alleged "[t]he situation began when [she] approached Jay LeHew" and another employee named "Toddy" in order to file a formal complaint about harassment and racism purportedly perpetrated by Ellston's supervisor, Rebecca. (*Id.* at 3.) Ellston claimed that "[t]hese issues started from [her] first month at the company and included various forms of mistreatment." (*Id.*) Specifically, Ellston alleged that Rebecca "humiliate[d]" her in front of colleagues, assigned her incomplete tasks left by co-workers which "overburden[ed] [her] without extra compensation," required her to translate calls and assist the sales department—tasks outside of her job description—without receiving additional compensation, denied her benefits, and did not provide her "with necessary information and training for essential software required for [her] role." (*Id.*) Ellston additionally alleged that Rebecca "humiliated [her] in office chats, in private messages, and via text, often mocking [her] fluency in English." (*Id.*)

In response, Ellston reported her issues with Rebecca to the company's HR representative, who sent her home and set a meeting with the "responsible director, Jay LeHew Jr.," for 8:00 a.m. the next day. (*Id.*) However, Ellston was not given the time of the meeting

and did not see a message from Jay LeHew sent to her on the company's internal software because she "was logged out and not working at that time." (*Id.*) Though Ellston indicated she could immediately attend the meeting when she saw the message, Jay LeHew "declined as he was leaving." (*Id.*)

Though Ellston was supposed to return to work on April 13, 2024, Jay LeHew informed her that she could not return to work "as the issue with [her] supervisor had not been resolved." (*Id.*) Though Rebecca was apparently on leave, Ellston "was still barred from working." (*Id.*) Ellston was again prohibited from working the following day. (*Id.*)

On April 15, 2024, Ellston attended a meeting with Jay LeHew, Toddy, and Rebecca. (*Id.*) There, Ellston alleged she "presented evidence of the harassment and cited Virginia's laws protecting employees from retaliation," specifically naming Va. Code Ann. §§ 40.1-27.3, 2.2-3011, and 40.1-51.2:1 and the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.* (*Id.*) Ellston alleged that Jay LeHew "did not review [her] evidence" and "claimed that Rebecca's actions did not constitute harassment or racism because she had been with the company for 13 years and was considered the best person to train [Ellston]." (*Id.* at 3–4.) Jay LeHew informed Ellston that "if [she] did not accept this, [she] would no longer be part of the company's payroll." (*Id.* at 4.) Ellston alleged that she was therefore "effectively terminat[ed]." (*Id.*)

Ellston sought relief amounting to $94,000 for lost wages, emotional distress, and punitive and continuing damages. (*Id.*) Specifically, Ellston alleged that she had been unable to secure employment since her wrongful termination on April 15, 2024, and sought $4,000 in lost wages from that date. (*Id.*) She additionally requested $20,000 for the "significant emotional distress, anxiety, and stress" caused by "[t]he harassment, discrimination, and subsequent wrongful termination." (*Id.*) Ellston also requested $50,000 in punitive damages for the "deliberate and malicious nature of the retaliation and the company's failure to address [her] complaints," as well as $20,000 "for the long-term impact on [her] financial health." (*Id.*)

On June 24, 2024, the LeHew Defendants timely filed a notice of removal to the U.S. District Court for the Western District of Virginia pursuant to 28 U.S.C. §§ 1441 and 1446. (Dkt. 1.) On July 1, 2024, the LeHew Defendants filed a motion to dismiss. (Dkt. 5.) The motion provided four grounds for dismissal of Ellston's claims under Federal Rule of Civil Procedure 12(b)(6): first, claims under the ADA cannot be brought against individuals; second, Ellston had not alleged protected activity or the exhaustion of administrative remedies as required by Va. Code Ann. § 40.1-51.2:1; third, Ellston had not alleged she was an employee of the government or a government contractor or that her employer was the government or a government contractor as required by Va. Code Ann. § 2.2-3011; and fourth, Ellston had not alleged facts sufficient to support a claim and did not allege exhaustion of administrative remedies pursuant to the ADA. (Dkt. 6 at 1–2.) Ellston responded to the motion three days after the issuance of a *Roseboro* notice, (Dkt. 10; *see* Dkt. 8), and again twenty-one days later, (Dkt. 15). In the meantime, she also filed a motion for sanctions, (Dkt. 12), and a motion to

disqualify the LeHew Defendants' counsel, (Dkt. 13), both of which Judge Hoppe later denied. (*See* Dkt. 34.)

Ellston also attempted to file an amended complaint on July 23, 2024, although the time in which she could amend her pleading as a matter of course had passed, *see* Fed. R. Civ. P. 15(a)(1), and she did not have written consent of the LeHew Defendants or the court's leave, *see* Fed. R. Civ. P. 15(a)(2). (*See* Am. Compl. (Dkt. 14).) Ellston noted that she sought "to amend the complaint to include additional damages due to the involvement and actions of the LeHew family companies." (*Id.* ¶ 2.) The amended complaint added six parties: Advent of Virginia, Inc.; Jeffrey L. LeHew Family, LLC I-XIV; Via Satellite, Inc.; JLL Aviation, LLC; JLL Family, LLC; and JLL Venture, LLC (collectively, the "Entity Defendants"). (*Id.* ¶¶ 7–12.) The amended complaint outlined three claims for relief under the ADA, the Virginia Whistleblower Protection Law ("VWPL"), Va. Code Ann. § 40.1-27.3[1], and the Virginia Fraud and Abuse Whistle Blower Protection Act ("VFAWPA"), Va. Code Ann. § 2.2-3009 *et seq.*, (Am. Compl. ¶¶ 21–26), and, curiously, contained only six paragraphs of "Factual Allegations" that read:

> 15. Plaintiff was employed by VIA SATELLITE, INC. and other LeHew family companies from January 17th 2024 to April 15th 2024.
>
> 16. Plaintiff suffers from depression, ADHD, anxiety, and PTSD, which are disabilities under the ADA.

---

[1] Although Ellston's amended complaint does not provide statutory citations, Virginia courts have recently referred to Va. Code Ann. § 40.1-27.3 as the "Virginia Whistleblower Protection Law." *See, e.g.*, *Harris v. Wash. & Lee Univ.*, 906 S.E.2d 128, 132 (Va. Ct. App. 2024); *Rivera v. ManTech Int'l Corp.*, 902 S.E.2d 120, 121 (Va. Ct. App. 2024). Therefore, the court will refer to Va. Code Ann. § 40.1-27.3 as VWPL in this memorandum opinion.

> 17. Plaintiff made complaints about workplace mental health and safety, which are protected activities under the VWP[L] and VFAWPA.
>
> 18. Defendants engaged in discriminatory practices, retaliatory actions, and wrongful termination of Plaintiff due to her disabilities and protected activities.
>
> 19. Plaintiff has met all administrative requirements by filing formal complaints with the EEOC, US Department of Labor, Virginia Attorney General Office, and United States Department of Justice Civil Rights Division.
>
> 20. The LeHew family companies, including VIA SATELLITE, INC., have received substantial federal funding and contracts, making them subject to federal and state whistleblower protections.

(*Id.* ¶¶ 15–20.)  No other factual allegations raised in Ellston's original complaint were included.  The complaint also requested that "the amount of damages sought be increased to 100,000 US$" because of "the significant involvement of the LeHew family companies in the wrongful actions and the additional damages suffered by" Ellston.  (*Id.* ¶ 27.)

On August 6, 2024, the LeHew Defendants filed a motion consenting to Ellston's amendment, (Dkt. 20), and on August 20 the LeHew Defendants and Entity Defendants collectively filed a motion to dismiss the amended complaint.  (Dkt. 21.)  A *Roseboro* notice was issued to Ellston the next day, (Dkt. 23), but she did not file a response within 21 days.  On October 9, 2024, Judge Hoppe issued an order deeming the amended complaint operative pursuant to Federal Rule of Civil Procedure 15(a)(2) and finding the LeHew Defendants' initial motion to dismiss moot.  (Dkt. 28.)  The next day, Judge Hoppe held a hearing on the second motion to dismiss.  (*See* Dkt. 31.)  Ellston filed a response to the second motion to dismiss twenty days later.  (Dkt. 33.)

On November 21, 2024, Judge Hoppe issued an R&R recommending that this court grant Defendants' motion to dismiss. (Dkt. 35.) Judge Hoppe first found that Ellston's amended complaint "contains no facts describing any unlawful act or omission by any identifiable Defendant." (*Id.* at 7.) Judge Hoppe noted that Ellston's amended complaint "could be dismissed on this ground alone." (*Id.* at 8.)

Judge Hoppe next explained that each of Ellston's claims should be dismissed on the merits. Because Ellston does not allege that she was employed by a state governmental agency, nor that Defendants are state governmental agencies or agents thereof, Judge Hoppe recommended that her claims under the VFAWPA be dismissed. (*Id.* at 8–9.) Judge Hoppe similarly found that the VWPL does not apply because Ellston's amended complaint does not link her concerns about her workplace to a violation of state or federal law, nor does it allege any facts supporting the allegation that she was terminated because of her complaints. (*Id.* at 9–10.) Turning next to the ADA claims, Judge Hoppe first noted that any ADA claim against the LeHew Defendants is barred because the ADA does not provide a cause of action against defendants in their individual capacities. (*Id.* at 11.) He then recommended dismissal as to the ADA discrimination claim against the Entity Defendants because the amended complaint does not allege that the Entity Defendants even knew of Ellston's medical conditions, nor does it provide factual allegations supporting a reasonable inference that those conditions played a role in the decision to terminate her employment. (*Id.* at 11–12.) Ellston's final claim of ADA retaliation against the Entity Defendants could similarly be dismissed for failure to provide facts supporting the claim, including factual allegations supporting that Ellston

engaged in protected conduct and that she was terminated *because of* that protected conduct. (*Id.* at 12.) Finally, Judge Hoppe observed that Ellston's ADA claims should additionally be dismissed because of failure to exhaust administrative remedies—specifically, Ellston's failure to file her EEOC right-to-sue letter with her complaint. (*Id.* at 13.)

Ellston filed objections to the R&R on November 30, 2024. (Dkt. 36.) Ellston contends that the R&R "overlooks material facts and misapplies legal standards under federal and Virginia state laws." (*Id.* at 1.) Specifically, Ellston reports that she "was mocked for her English fluency," "was disproportionately assigned tasks outside her role, without compensation or acknowledgement," "was denied sales commissions and other benefits provided to similarly situated employees," and "was routinely tasked with responsibilities beyond her job description, including completing unfinished work left by colleagues, without additional compensation." (*Id.* at 1–2.) Ellston also notes that she "filed an internal complaint on April 11, 2024, addressing harassment, unsafe conditions, and language-based discrimination" and that she was terminated four days later in retaliation, and that at least one Defendant is "a federal contractor receiving $3.4 million in federal funds." (*Id.*) Ellston further makes three specific "legal objections," claiming (1) that "the R&R misapplied the requirement for administrative exhaustion under the ADA"; (2) that "the R&R incorrectly dismissed Plaintiff's claims under the VWP[L] and the VFAWPA"; and (3) that "monetary damages were not fully considered." (*Id.* at 2–3.) Seven pieces of additional evidence were attached to the objections, along with one exhibit, none of which was attached to the original or amended complaints. (*Id.* at 5–37; *see id.* at 3 (providing summary).)

- 8 -

Defendants filed a response on December 11, 2024, (Dkt. 37), and Ellston filed a reply on January 3, 2025. (Dkt. 38.) On March 17, Ellston also filed a "Motion for Leave to File Supplemental Evidence," to which she attached an EEOC right-to-sue letter issued the day before. (Dkt. 39.)

## II.    Standard of Review

Pursuant to 28 U.S.C. § 636(b)(1)(B), a district court may delegate a dispositive motion to a magistrate judge, who then "submit[s] to [the district court] proposed findings of fact and recommendations for the disposition" of the motion. For a limited period after the issuance of the magistrate judge's report and recommendation, "any party may serve and file written objections to such proposed findings and recommendations." 28 U.S.C. § 636(b)(1)(C). Absent objection by either party, the district court reviews the magistrate's recommendation for clear error. *See Diamond v. Colonial Life & Accident Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005).

If, however, a party "object[s] to the finding or recommendation on [an] issue with sufficient specificity so as reasonably to alert the district court of the true ground for the objection," the district court must undertake *de novo* review of that issue. *Elijah v. Dunbar*, 66 F.4th 454, 460 (4th Cir. 2023) (quoting *United States v. Midgette*, 478 F.3d 616, 622 (4th Cir. 2007)); *see* Fed. R. Civ. P. 72(b)(3) ("The district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to."). "If the grounds for objection are clear, district court judges must consider them de novo, or else run afoul of both § 636(b)(1) and Article III." *Elijah*, 66 F.4th at 460. Applying this standard of review, "[t]he

- 9 -

district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b)(3); 28 U.S.C. § 636(b)(1).

When a proper objection is made, "a district court is required to consider all arguments directed to that issue, regardless of whether they were raised before the magistrate." *United States v. George*, 971 F.2d 1113, 1118 (4th Cir. 1992). However, "[t]he district court's decision whether to consider additional evidence is committed to its discretion, and any refusal will be reviewed for abuse." *Caldwell v. Jackson*, 831 F. Supp. 2d 911, 914 (M.D.N.C. 2010) (citing *Doe v. Chao*, 306 F.3d 170, 183 & n.9 (4th Cir. 2002)). Although "attempts to introduce new evidence after the magistrate judge has acted are disfavored," the district court may allow it "when a party offers sufficient reasons for so doing." *Id.*

Motions to dismiss under Rule 12(b)(6) test the legal sufficiency of a complaint. *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). They do not "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Bing v. Brivo Sys., LLC*, 959 F.3d 605, 616 (4th Cir. 2020) (quoting *King v. Rubenstein*, 825 F.3d 206, 214 (4th Cir. 2016)). To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead sufficient factual allegations to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* When reviewing a Rule 12(b)(6) motion to dismiss, the court must "accept as true all well-pleaded

facts in a complaint and construe them in the light most favorable to the plaintiff." *Wikimedia Found. v. Nat'l Sec. Agency*, 857 F.3d 193, 208 (4th Cir. 2017). If, however, the district court considers matters outside the pleadings, "the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d).

The court liberally construes pleadings filed by a *pro se* party. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). "[A] *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Id.* (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). The liberal construction rule "allows courts to recognize claims despite various formal deficiencies, such as incorrect labels or lack of cited legal authority." *Wall v. Rasnick*, 42 F.4th 214, 218 (4th Cir. 2022). Though "[a]s a general rule, an amended pleading ordinarily supersedes the original and renders it of no legal effect," *Young v. City of Mt. Ranier*, 238 F.3d 567, 572 (4th Cir. 2001) (internal quotation marks omitted), "courts in this circuit regularly consider factual allegations in a pro se plaintiff's original and amended complaint, and liberally construe filings associated with an amended complaint," *May v. Martin Fein Int. Ltd.*, No. 5:21-CV-00083, 2023 WL 6295125, at *2 (E.D.N.C. Sept. 27, 2023) (collecting cases). That said, liberal construction does not "transform the court into an advocate" for *pro se* parties. *Weller v. Dep't of Soc. Servs. for City of Balt.*, 901 F.2d 387, 391 (4th Cir. 1990). *Pro se* parties, like all litigants, must comply with the pleading requirements in the Federal Rules of Civil Procedure. *Bing*, 959 F.3d at 618.

### III.     Analysis

Addressing Ellston's objections, the court applies a *de novo* standard of review to those relevant portions of the R&R.  It first considers Ellston's "factual objections" and additional evidence before turning to her three "legal objections."  The court then reviews all other portions of the R&R for clear error.

### A.  Factual Objections

At the outset, the court notes that the R&R relies almost exclusively—with one exception regarding administrative exhaustion—on Ellston's July 23 amended complaint. (*See id.* at 7–13); *Fawzy v. Wauquiez Boats SNC*, 873 F.3d 451, 455 (4th Cir. 2017) ("[A] properly filed amended complaint supersedes the original one and becomes the operative complaint in the case."). Although Ellston does not explicitly spell it out, the court construes her listing of specific facts in the "Factual Objections" section—which includes facts that were contained within in the original complaint, but not in the amended complaint—as her objection to the magistrate judge's exclusive reliance on her amended complaint in analyzing the motion to dismiss. (*See* Dkt. 36 at 1–2.)

In consideration of Ellston's *pro se* status, the court finds it hard to overlook certain aspects of Ellston's amended complaint which suggest it was intended not to supersede, but to supplement the original pleading.  To begin, the second paragraph of the amended complaint explains that Ellston sought "to amend the complaint to include additional damages due to the involvement and actions of" the newly added corporate parties, which suggests an edit to—rather than the abandonment of—the original complaint. (Am. Compl. ¶ 2.) Ellston

- 12 -

additionally "requests that the amount of damages sought be increased to 100,000 US$" from the $94,000 requested in her original pleading. (*Id.* ¶ 27.) Most significantly, Ellston does not include any of the narrative alleged in her original complaint but instead refers generally to "discriminatory practices, retaliatory actions, and wrongful termination . . . due to her disabilities and protected activities." (*Id.* ¶ 18.) Liberally construing the amended complaint, the court finds it a pared-down filing which appears to supplement the original complaint. The court therefore deems it appropriate to consider the factual allegations in both Ellston's original and amended complaints for the purposes of resolving Defendants' motion to dismiss. *See, e.g.*, *May*, 2023 WL 6295125, at *2.

The court will not, however, consider the additional evidence submitted with Ellston's objections to the R&R. *See* 28 U.S.C. § 636(b)(1); *Doe*, 306 F.3d at 183 n.9 ("Because Congress used the permissive term 'may' in connection with the receipt of additional evidence, the question of whether to consider such evidence rests within the sound discretion of the district court."). First, consideration of such additional evidence, which was not included in Ellston's original or amended complaint, risks converting the motion into one for summary judgment under Rule 56. Fed. R. Civ. P. 12(d). Second, even if this court did consider the additional evidence presented, that evidence would not change the disposition of this motion.

Accordingly, Ellston's objection as to factual allegations, which the court construes as an objection to the R&R for not considering alleged facts in the original complaint, is sustained. Because the original complaint appears to contain at least one allegation of a specific act by one Defendant, (Compl. at 3–4), the court declines to adopt Section III.A of

the R&R, which addresses Ellston's failure to allege any act by any Defendant in her amended complaint alone (*see* Dkt. 35 at 7–8) and modifies the R&R to the extent that it only considers the amended complaint. However, even after considering the factual allegations in both the original and amended complaint, the court believes Ellston still has failed to state claims upon which relief can be granted.

To begin, Ellston fails to state a claim for retaliation or discrimination under the ADA. Because the ADA provides a cause of action only against employers and not defendants in their individual capacities, Ellston's ADA claims against the LeHew Defendants must be dismissed. *See Jones v. Sternheimer*, 387 F. App'x 366, 368 (4th Cir. 2010); *Baird ex rel. Baird v. Rose*, 192 F.3d 462, 472 (4th Cir. 1999). Turning to the Entity Defendants, Ellston fails to raise a claim of ADA discrimination because she does not allege facts—in either her original or amended complaint—which support a reasonable inference that she was a qualified individual with a disability, that she was fulfilling her employer's legitimate expectations at the time of her termination, and that the circumstances of her discharge "raise a reasonable inference of unlawful discrimination" on the basis of that disability. *Kelly v. Town of Abingdon, Va.*, 90 F.4th 158, 169 (4th Cir. 2024) (quoting *Reynolds v. Am. Nat'l Red Cross*, 701 F.3d 143, 150 (4th Cir. 2012)). Similarly, the factual allegations in both of Ellston's complaints fail to support a plausible claim for ADA retaliation against the Entity Defendants, as Ellston does not plausibly allege that she engaged in protected conduct opposing an ADA violation (or what she in good faith believed to be an ADA violation). *See Freilich v. Upper Chesapeake Health, Inc.*, 313 F.3d 205, 216 (4th Cir. 2002) (finding that a plaintiff "need not establish that the

conduct she opposed actually constituted an ADA violation" but that she still "must allege the predicate for a reasonable, good faith belief that the behavior she is opposing violates the ADA").

Nor does Ellston plausibly allege a claim under the VFAWPA. The VFAWPA provides that "[n]o employer may discharge, threaten, or otherwise discriminate or retaliate against a whistle blower." Va. Code Ann. § 2.2-3011(A). The statute defines "employer" as a supervisor of the "employee" filing the report or "an agent of the governmental agency," where an "employee" is any full-time worker whose compensation is paid, "in whole or in part, by a governmental agency." *Id.* § 2.2-3010. For the purposes of the statute, governmental agencies are only those instrumentalities of the state or "any county, city, or town or local or regional governmental authority." *Id.*; *see Silverman v. Town of Blackstone, Va.*, 843 F. Supp. 2d 624, 627 (E.D. Va. 2011) ("Clearly, the [VFAWPA] only provides protection to employees of state agencies."). Ellston's allegation that the Entity Defendants "have received substantial federal funding and contracts," (Am. Compl. ¶ 20), does not mean that she is an employee paid in whole or in part by a state or local governmental agency, and she alleges no additional facts in her original or amended complaint which might support that assertion. Accordingly, Ellston fails to plead a cause of action under the VFAWPA.

Finally, Ellston fails to make sufficient factual allegations in her original and amended complaint to raise a claim under the VWPL. To state a claim under the VWPL, a plaintiff must allege facts sufficient to show that (1) she or someone acting on her behalf made a good faith report of a federal or state law violation to a supervisor or other qualifying official, (2)

she was discriminated or retaliated against by her employer, and (3) her report was the "but for" cause of the discrimination or retaliation. *See Workman v. LHC Grp., Inc.*, No. 1:23-cv-00048, 2024 WL 3572305, at *3 (W.D. Va. July 29, 2024); *Moore v. Copper River Shared Servs., LLC*, No. CL-2023-9565, 2024 WL 366099, at *9 (Va. Cir. Ct. Jan. 30, 2024). Although Ellston alleges conclusively that she reported violations of the ADA and Virginia statutes prohibiting discrimination and retaliation to her supervisor and others on April 15, 2024 (Compl. at 3), she does not plead any facts in her original or amended complaint showing that it was reasonable for her to believe that the alleged misconduct committed by Jay LeHew, Toddy, and Rebecca violated the ADA and other Virginia statutes. *See Workman*, 2024 WL 3572305, at *4–5 (finding plaintiff failed to "show that he both 'subjectively and reasonably believed' that the reported conduct was unlawful" when his complaint described the alleged offense "in vague generalities only"). True, Ellston alleges generally "harassment and racism" by her supervisor as well as humiliation, a lack of compensation for performing work she perceived to be outside of her job responsibilities, and a lack of necessary training and information to do her work. (Compl. at 3.) However, she does not plead sufficient facts to show how the alleged misconduct violated any federal or state law or regulation as required by VWPL. *See Colquitt v. Bon Secour Mercy Health*, No. 4:21-cv-53, 2022 WL 479093, at *5 (E.D. Va. Feb. 16, 2022) (dismissing VWPL claim because plaintiff failed to show how "misconduct" and "unethical practices" violated any federal or state law); *Petersen v. DC Mech., LLC*, No. 1:22-cv-784, 2022 WL 22695554, at *4 (E.D. Va. Aug. 24, 2022) (dismissing a VWPL claim because

plaintiff failed to allege sufficient facts showing that his reports of unlawful and unethical practices were reports about federal or state law violations).

Therefore, even after accepting the factual allegations in her original and amended complaints as true and construing them in a light most favorable to Ellston, the court finds that she has failed to sufficiently plead her claims under the ADA, VFAWPA, and VWPL.

## B. Administrative Exhaustion

Turning to Ellston's "legal objections," she first claims that the R&R "misapplied the requirement for administrative exhaustion under the ADA." (Dkt. 36 at 2.) Ellston contends that she "made good-faith efforts to file complaints with the U.S. Department of Labor and the Department of Justice" and that "[c]ourts have recognized that pro se litigants are entitled to leniency when administrative procedures are incomplete due to documented attempts to comply." (*Id.*) She cites *Love v. Pullman Co.*, 404 U.S. 522 (1972), in support of this claim. (*Id.*)

Although litigants proceeding *pro se* are afforded leniency with regard to improper terminology or "the failure to adhere to formalities" in their filings, *Bing*, 959 F.3d at 618, they must nevertheless allege sufficient facts to satisfy the pleading requirements, *see, e.g.*, *Weidman v. Exxon Mobil Corp.*, 776 F.3d 214, 219 (4th Cir. 2015). In this case, "receipt of, or at least entitlement to, a right-to-sue letter is a jurisdictional prerequisite *that must be alleged in a plaintiff's complaint*." *Davis v. N.C. Dep't of Corr.*, 48 F.3d 134, 140 (4th Cir. 1995) (emphasis added). Ellston's amended complaint, which alleges only that she "met all administrative requirements by filing formal complaints with the EEOC" and other agencies, does not itself claim that Ellston exhausted that complaint with the EEOC and had received or was entitled to a right-

- 17 -

to-sue letter. (Am. Compl. ¶ 19.) Without further allegations, Judge Hoppe correctly concluded that Ellston's ADA claim should be dismissed because of failure to exhaust administrative remedies. And because the original complaint does not even mention an EEOC complaint or any other administrative filing, the court finds Ellston failed to sufficiently allege administrative exhaustion in her pleadings.

Nevertheless, the court notes that several additional filings have been submitted that may affect a finding of administrative exhaustion. First, the magistrate judge explicitly considered an EEOC inquiry attached to Ellston's response to the first motion to dismiss in recommending the ADA claims be dismissed for failure to exhaust. (Dkt. 35 at 13 (citing Dkt. 10-1).) Additionally, on March 17, 2025, Ellston filed a motion for leave to file the EEOC right-to-sue letter, which was issued the day before. (Dkt. 39.)

The magistrate judge reached administrative exhaustion of the ADA claims only after determining that both the ADA retaliation and discrimination claims failed on other grounds. (Dkt. 35 at 10–13.) The court has reviewed those portions of the R&R, to which Ellston did not object, for clear error regarding Ellston's failure to sufficiently allege both the ADA retaliation and discrimination claims and adopts them in full. Consideration of the factual allegations in the original complaint, as discussed above, does not alter this analysis. Therefore, the court need not reach the question of whether it is appropriate to consider those filings in the resolution of this motion. The court overrules Ellston's legal objection and adopts the R&R only to the extent it relies upon the amended complaint and not any additional evidence.

## C. State-Law Claims

Ellston next claims that the R&R "incorrectly dismissed [her] claims under the VWP[L] and VFAWPA," because the statutes "explicitly protect employees who report workplace misconduct." (Dkt. 36 at 2.) She maintains that "evidence of federal funding substantiates the applicability of these protections to Defendants." (*Id.*)

Federal funding does not, however, bear any relevance to Ellston's claims under the two Virginia statutes. In fact, the magistrate judge addressed exactly this argument in regard to the VFAWPA. (Dkt. 35 at 8–9 ("Even accepting that allegation [of federal funding] as true, the VFAWPA simply does not protect 'employees' of *federal* agencies or *federal* government contractors.").) Ellston may not use her objections to get a "second bite at the apple" when the magistrate has already addressed her argument. *See Veney v. Astrue*, 539 F. Supp. 2d 841, 846 (W.D. Va. 2008).

Nor does federal funding render Ellston's VWPL claim sufficient. The VWPL mandates that "an employer shall not discharge . . . an employee . . . because the employee . . . in good faith reports a violation of any federal or state law or regulation." Va. Code Ann. § 40.1-27.3(A)(1); *see Workman*, 2024 WL 3572305, at *3 (setting forth the three elements required to raise a VWPL claim). Ellston's failure to allege sufficient facts, as discussed above, is not cured merely because her employer receives federal funding. The court therefore overrules Ellston's objection, adopts the magistrate judge's R&R, and finds that, upon consideration of both original and amended complaints, Ellston has failed to sufficiently plead her state-law claims.

### D. Monetary Damages

Ellston concludes by taking issue with the court's failure to "fully consider[]" monetary damages, including unpaid commissions and denial of benefits, lost wages and future earnings, and damages payable for emotional distress. (Dkt. 36 at 2–3.) Because the court concludes that Ellston fails to state a claim under the VWPL, VFAWPA, or ADA, any discussion of monetary damages is irrelevant. Thus, the court overrules Ellston's objection and adopts the R&R as to monetary damages.

## IV.    Conclusion

For the foregoing reasons, the court will overrule all of Ellston's objections except for the objection as to the magistrate judge's sole reliance on the amended complaint, adopt the R&R as modified, and grant Defendants' motion to dismiss. Ellston's VWPL claim and her ADA claim against the Entity Defendants will be dismissed without prejudice with leave to amend. Her VFAWPA claim and ADA claim against the LeHew Defendants will be dismissed with prejudice, as the court concludes that Ellston cannot correct the legal deficiencies in those claims via amendment.

An appropriate Order shall accompany this Memorandum Opinion.

**ENTERED** this  28th  day of March, 2025.

*Jasmine H. Yoon*

_____
HON. JASMINE H. YOON
UNITED STATES DISTRICT JUDGE